**In re Donald Michael KELLERMAN and Jennifer Lynn Kellerman, Debtors.**

**No. 06–22028.**

United States Bankruptcy Court, D. Kansas.

Aug. 15, 2007.

David B. Anderson, Jr., Kansas City, MO, Marilyn J. Washburn, St Louis, MO, for Creditors.

Russell B. Cloon, Cloon Legal Services, Baldwin City, KS, for Debtor and Joint Debtor.

## ORDER REGARDING DEBTORS' OBJECTION TO CLAIM NO. 4 AND CREDITOR'S OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

ROBERT D. BERGER, Bankruptcy Judge.

DaimlerChrysler Financial Services Americas, L.L.C. ("Creditor"), successor in interest to DaimlerChrysler Services North America, L.L.C., objects to confirmation based on the plan's treatment of its 910–car claim.[1] In a related matter, Debtors object to the amount of Creditor's 910–car claim.[2] The issue is a question of law about how prepetition payments are to be allocated between the refinanced negative equity and the purchase money security interest ("PMSI") in a 910–car claim under 11 U.S.C. § 1325(a)'s hanging paragraph.

■ This Court has already held Creditor's 910–car claim is limited to the PMSI in the new vehicle and excludes any other additional debt associated with the transaction.[3] Under Kansas law, the PMSI is the purchase price of the vehicle. Any debt from a previous vehicle refinanced with the purchase of the new car is not included in the 910–car claim.[4] *Vega* and *Hernandez–Simpson* held the PMSI was

1. Doc. No. 44.

2. Doc. No. 30.

3. Doc. No. 27. *See also In re Smith*, Case No. 06-20508 (Bankr.D.Kan. November 6, 2006) (J. Berger); *In re Vega*, 344 B.R. 616 (Bankr. D.Kan.2006); *Citifinancial Auto v. Hernandez–Simpson (In re Hernandez–Simpson)*, 369 B.R. 36 (D.Kan.2007).

4. *Hernandez–Simpson*, 369 B.R. at 47.

the purchase price of the vehicle, plus accrued interest, less payments made.[5] However, neither *Hernandez–Simpson* nor *Vega* discussed a method of allocating prepetition payments between the unsecured negative equity and the PMSI. In both cases, the debtors filed bankruptcy before making a payment.

K.S.A. § 84–9–103(e) provides for the application of payments between PMSI and consolidated non-PMSI debt:

Application of payment. If the extent to which a security interest is a purchase-money security interest depends on the application of a payment to a particular obligation, the payment must be applied:

(1) In accordance with any reasonable method of application to which the parties agree;

(2) in the absence of the parties' agreement to a reasonable method, in accordance with any intention of the obligor manifested at or before the time of payment; or

(3) in the absence of an agreement to a reasonable method and a timely manifestation of the obligor's intention, in the following order:

(A) To obligations that are not secured; and

(B) if more than one obligation is secured, to obligations secured by purchase-money security interests in the order in which those obligations were incurred.

As *Vega* noted, this statute is equally applicable to consumer transactions as to commercial transactions because the Kansas legislature specifically omitted from the uniform law the phrase "in a transaction other than a consumer-goods transaction" from subsections (e), (f), and (g) and declined to adopt subsection (h), which allows courts in other jurisdictions to use their discretion in determining an allocation in the consumer goods context.[6] Thus, to determine the 910–car claim's value, the vehicle's cash purchase price is the starting point. Thereafter, prepetition payments are to be applied pursuant to the parties' written or manifest agreement. In the absence of any agreement or manifested intent, the prepetition payments shall be applied to the unsecured negative equity first, then to the PMSI.

In this case, the retail installment contract was made under Kansas law. Thus, K.S.A. § 84–9–103(e) controls calculation of the 910–car claim. The Dodge Durango's cash price was $29,133.56. Debtors received a $4,800.00 manufacturer's rebate. However, pursuant to the contract, the rebate was applied to the negative equity rolled-in from the prior loan. The $11,347.24 balance from the prior note was reduced to $6,547.24. The $36,179.80 total amount financed included (a) the $29,133.56 cash price for the Durango; (b) the $6,547.24 for a prior loan balance on a Jeep Wrangler; and (c) $499.00 for GAP insurance. Aside from the rebate's application to the prior loan balance, the parties' agreement does not allocate payments between PMSI and non-PMSI debts. Creditor asserted a contract balance of $31,826.68 as of the petition date.[7] Creditor later asserted a PMSI in the Durango in the amount of $24,397.51 as of the peti-

---

5. *Id.; Vega,* 344 B.R. at 622.

6. *Vega,* 344 B.R. at 623 n. 29; *see, e.g., In re Pajot,* 371 B.R. 139, 2007 WL 2109892 (Bankr.E.D.Va.2007) (prorating prepetition installment payments between PMSI and unsecured debt under Virginia's dual status rule).

7. Claim No. 4.

tion date.[8] The Court cannot tell from the record if this change reflects deduction of the refinanced negative equity from the contract balance, is the result of application of prepetition payments, or a combination of both. The record does not include the payment history so the Court is unable to calculate the claim value at this time. The parties are directed to calculate the claim pursuant to this Order. If the parties are unable to reconcile their claim values within 30 days of this Order, Debtors shall request an evidentiary hearing from the Court.

### Conclusion

Factual questions need to be answered before the Court can issue a final order on Creditor's Objection to Confirmation and Debtors' Objection to Claim No. 4. The parties are directed to calculate Creditor's claim in accordance with K.S.A. § 84–9–103(e) and advise the Court within 30 days of the date of this Order or the matter shall be set for an evidentiary hearing.

IT IS SO ORDERED.